# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ENVIROSOLIDS, LLC, a Michigan
Limited Liability Company,

      Interpleader Plaintiff,                                CASE NO. 12-10596
                                                       HON. LAWRENCE P. ZATKOFF

v.

S & J MANAGEMENT, INC., an Ohio Corporation,
SJGK, LLC, an Ohio Limited Liability Company,
RIVERHEAD ADVISORS, LTD., a foreign company,
EM PRODUCTIONS, L.L.C., a foreign company,
M&A TRADERS, a Missouri company, and
SKYLINE AVIATION, INC., a Texas corporation,

            Interpleader Defendants.
_____/

SKYLINE AVIATION, INC., a Texas Corporation,

      Counter/Cross/Third-Party Plaintiff,

v.

S & J MANAGEMENT, INC., an Ohio Corporation,
SJGK, LLC, an Ohio Limited Liability Company,
ENVIROSOLIDS, LLC, a Michigan Limited Liability
Company, KEN GRANT, an individual, THOMAS
ABRAHAM, an individual, and LAWRENCE BURT
PIERCE, an individual,

      Counter/Cross/Third-Party Defendants.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on February 28, 2014

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

# I. INTRODUCTION

This matter is before the Court on Defendant Skyline Aviation, Inc.'s Motion for Partial Summary Judgment [dkt 57]. The motion has been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the following reasons, Defendant Skyline Aviation, Inc.'s motion is DENIED.

# II. BACKGROUND

The following facts highlight the relationships between Defendant Skyline Aviation, Inc. ("Defendant Skyline"), SJGK Defendants,[1] and Plaintiff EnviroSolids, LLC ("Plaintiff").

In June and July 2010, SJGK Defendants purchased approximately 750,000 and 450,000 gallons of oil, respectively, from two separate companies. On September 15, 2010, Plaintiff and SJGK Defendants entered into a lease agreement whereby SJGK Defendants stored the purchased oil at Plaintiff's facility.[2] Shortly after the lease was signed, SJGK Defendants purchased an additional 40,000 gallons of oil from Plaintiff. As of September or October 2010, SJGK Defendants were storing approximately 1,240,000 gallons of oil in Plaintiff's tanks.

During the summer of 2011, an employee of Defendant Skyline—Jeff Rogers ("Rogers")—was introduced to SJGK Defendants through third-party brokers Tim Fitzpatrick ("Fitzpatrick") and Dub Phillips ("Phillips"). On June 30, 2011, Defendant Skyline received a memorandum from SJGK Defendants' principal Abraham that exemplified "3,400,000 gallons of fuel oil" were titled in SJGK Defendants' name and located at Plaintiff's facility. Defendant Skyline agreed to purchase the 3,400,000

---

[1] Defendants S & J Management, Inc., SJGK, LLC, Ken Grant ("Grant") and Tom Abraham ("Abraham") will be collectively referred to in this Opinion as "SJGK Defendants."

[2] For a more extensive discussion regarding the terms of the lease agreement the Court directs the parties to its concurrently-entered February 28, 2014, Opinion and Order [dkt 82].

2

gallons of oil from SJGK Defendants as memorialized in an invoice dated August 18, 2011, and signed by Abraham and Rogers.

On September 28, 2011, Rogers and third-party broker Phillips separately flew to Detroit to meet with Grant (another SJGK Defendants' principal), Abraham, and Burt Pierce (principal of Plaintiff and hereafter referred to as "Pierce").[3]  The purpose of this meeting was to tour Plaintiff's facility and discuss blending of the oil.  Apparently due to Rogers' difficulty in raising capital for the initial payment, Defendant Skyline—via Rogers—and SJGK Defendants revised the purchase invoice.[4]  Similar to the previously-executed invoice, Defendant Skyline was required to wire an initial payment—now $300,000.00—prior to "blending and shipping" of the oil.  The September 28, 2011, invoice also illustrated that Defendant Skyline was purchasing 4,000,000 gallons[5] of oil for $6,200,000.00.

Defendant Skyline alleges that neither SJGK Defendants nor Pierce (Plaintiff's principal) informed it—or its alleged representative, Phillips—during the Detroit meeting (1) that Defendant Riverhead Advisors LTD ("Defendant Riverhead") tendered a $500,000.00 payment to SJGK Defendants and made a demand for release of the oil in the previous weeks or (2) that Plaintiff had claimed ownership of the oil pursuant to SJGK Defendants' default of the lease.

On September 29 and 30, 2011, Rogers wired two payments totaling $250,000.00 to SJGK Defendants' account as part of Defendant Skyline's initial payment for the oil.[6]  Approximately 30 days later, SJGK Defendants paid Plaintiff $180,000.00 to partially satisfy the rent arrearage—Plaintiff then sold a portion of the oil to cover the remaining back rent owed by SJGK Defendants.

---

[3] Rogers was unable to attend the walk-through of Plaintiff's facility as his flight was delayed.
[4] In close temporal proximity to Defendant Skyline and SJGK Defendants' negotiations, two attendant events occurred.  First, Plaintiff notified SJGK Defendants of their default on the lease agreement on September 1, 2011.  And second, on September 9, 2011, Defendant Riverhead demanded that Plaintiff release the oil to it (Defendant Riverhead).  For a discussion of both events, the Court refers the parties to the concurrently-entered February 28, 2014, Opinion and Order [dkt 82].
[5] The quantity of oil increased due to blending.
[6] As discussed in the Court's February 28, 2014, Opinion and Order [dkt 82], Plaintiff and SJGK Defendants entered into a settlement agreement on September 30, 2011, over SJGK Defendants' default of the lease.

Defendant Skyline never tendered the remaining $50,000.00 of the initial payment to SJGK Defendants called for by the September 28, 2011, invoice.

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'–that is, pointing out to the district court– that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a

scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Defendant Skyline seeks partial summary judgment on the following counts contained in its countercomplaint/cross-complaint/third-party complaint: common-law fraud against SJGK Defendants (Count One); silent fraud against SJGK Defendants and Plaintiff (Count Two)[7]; civil conspiracy against SJGK Defendants and Plaintiff (Count Three); and unjust enrichment against SJGK Defendants and Plaintiff (Count Six). For the following reasons, the Court denies Defendant Skyline's motion.

### A. DEFENDANT SKYLINE'S MOTION AGAINST SJGK DEFENDANTS

Before the Court could adjudicate Defendant Skyline's instant motion, the parties (*i.e.*, SJGK Defendants and Defendant Skyline) entered into a consent order dismissing all of Defendant Skyline's cross-claims/third-party claims against SJGK Defendants. *See* Dkt. # 74. Also, as an integral condition of that consent order, Defendant Skyline "relinquish[ed] and abandon[ed] all claims, right, title or interest to the stored [O]il which comprises the *res* interplead in this litigation by Plaintiff." Therefore, based on the executed consent order, the Court will deny Defendant Skyline's motion as moot to the extent that it seeks summary judgment on its cross-claims/third-party claims asserted against SJGK Defendants.

### B. DEFENDANT SKYLINE'S MOTION AGAINST PLAINTIFF

#### i. Silent Fraud (Count Two)

Defendant Skyline contends that it is entitled to summary judgment on its silent fraud counter-claim because Plaintiff failed to disclose that (1) Defendant Riverhead had paid a $500,000.00 deposit on the oil and sought release of the oil from Plaintiff prior to the Detroit meeting, and (2) Plaintiff was

---

[7] Defendant Skyline asserts its claims against Plaintiff and Pierce (principal of Plaintiff). For the remainder of this Opinion, the Court's references to "Plaintiff" include Pierce.

asserting an interest in the oil pursuant to SJGK Defendants' default of the lease agreement.  Plaintiff

attacks Defendant Skyline's theory at a fundamental level, arguing that it (Plaintiff) was under no duty to

inform Defendant Skyline of those circumstances.  The Court agrees.

To prove a colorable silent fraud claim, a plaintiff must show that the defendant suppressed or

failed to disclose a material fact that the defendant was under a legal or equitable duty to disclose.  *See M*

*& D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 29 (1998); *United States Fidelity & Guaranty Co. v.*

*Black*, 412 Mich. 99, 125 (1981).  Mere nondisclosure is insufficient—"there must be some type of

misrepresentation, whether by words or action, in order to establish a claim of silent fraud." *Bergen v.*

*Baker*, 264 Mich. App. 376, 382 (2004) (citation omitted).

"'[T]he question of whether the defendant owes an actionable legal duty to the plaintiff is one of

law which the court decides after assessing the competing policy considerations for and against

recognizing such a duty.'" *In re Certified Question from Fourteenth Dist. Ct. of App. of Texas*, 479 Mich.

498, 504–05 (2007) (quoting *Friedman v. Dozorc*, 412 Mich. 1, 22 (1981)).  In making the determination,

a court considers "'the relationship of the parties, the foreseeability of the harm, the burden on the

defendant, and the nature of the risk presented.'" *Id.* at 515 (quoting *Dyer v. Trachtman*, 470 Mich. 45,

49 (2004)).

Plaintiff does not dispute it was aware that Defendant Riverhead submitted to SJGK Defendants a

$500,000.00 deposit on the same oil that Defendant Skyline contracted for, or that Plaintiff had asserted

an ownership interest in the oil due to SJGK's breach of the lease agreement.  Based on this, Plaintiff

could undoubtedly perceive that—if Defendant Skyline was proceeding under the assumption that no

other parties had paid for, or claimed in interest in, the oil—Defendant Skyline would suffer foreseeable

harm.  As such, this factor leans in favor of imposing a duty of disclosure.  Yet, foreseeability is not

dispositive of the issue because the "other considerations may be, and usually are, more important." *In re*

6

*Certified Question*, 479 Mich. at 508.  Notably, at least two of the other factors strongly weigh against imposition of such a duty.

First, the relationship between Plaintiff and Defendant Skyline is tenuous at best.  It appears the only interaction, or "relationship," Plaintiff had with Defendant Skyline was hosting Defendant Skyline at its facility on September 29, 2011, so that the parties (Defendant Skyline and SJGK Defendants) could discuss their oil purchase transaction.  Defendant Skyline does not—nor could it—argue that Plaintiff was a contracting party to Defendant Skyline and SJGK Defendants' purchase agreement.  Moreover, Defendant Skyline offers no evidence that it "made a direct inquiry" with Plaintiff regarding the ownership or quantity of the oil.  *See M & D*, 231 Mich. App. at 33.  Accordingly, Defendant Skyline failed to demonstrate that it enjoyed a legal (for example, a contractual) or equitable (for example, where a direct inquiry was made) relationship with Plaintiff such that a duty of disclosure applied.

Second, were the Court to find Plaintiff liable for failing to disclose the above-mentioned information, such a ruling would place a considerable burden on Plaintiff.  In other words, on each occasion that SJGK Defendants met with a prospective oil purchaser a representative of Plaintiff would need to be keenly attentive to all statements SJGK Defendants issued to the prospective buyers so as to determine (1) whether or not the representations being made were truthful, (2) if there was a risk of harm to a potential buyer, (3) and as a consequence, if Plaintiff should interject and disclose to any such buyer the falsity of SJGK Defendants' statements.  The Court declines to levy such a duty on Plaintiff here.

In sum, because Plaintiff owed no duty of disclosure to Defendant Skyline, the Court fails to grant summary judgment to Defendant Skyline and dismisses its silent fraud claim.

### ii. Civil Conspiracy (Count Three)

Defendant Skyline next alleges that Plaintiff conspired with SJGK Defendants to defraud Defendant Skyline of its $250,000.00 deposit for the oil.  As part of its theory Defendant Skyline claims

7

that on the same day it wired the deposit to SJGK Defendants, Plaintiff and SJGK Defendants entered into their settlement agreement. Defendant Skyline further claims that "soon thereafter" SJGK Defendants paid Plaintiff $180,000.00 and Plaintiff then seized and sold a portion of the oil to satisfy the outstanding rent SJGK Defendants owed. These facts, according to Defendant Skyline, establish that there is no genuine issue of material fact that Plaintiff and SJGK Defendants acted in concert to accomplish an unlawful purpose.

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Assoc.*, 257 Mich. App. 365, 384 (2003). A civil conspiracy claims fails as a matter of law unless the plaintiff establishes a "separate, actionable tort." *Id.* (citation omitted).

It is unclear from Defendant Skyline's countercomplaint what tort serves as the "separate, actionable tort" underlying the conspiracy claim lodged against Plaintiff. Likewise, its brief sheds no light on the issue and contains only a parroting of the civil conspiracy standard and scant facts that purportedly establish its claim. In fact, the entirety of Defendant Skyline's argument at the summary judgment stage is:

> When a party establishes the existence of a tort cause of action, co-conspirators can be held jointly and severally liable. 'A civil conspiracy is a combination of two or more persons [and/or entities], by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means.' In this case, it is undisputed that the same day that Skyline wired the second portion of the $250,000 deposit to [SJGK Defendants], [SJGK Defendants] signed its settlement agreement with [Plaintiff]. It is undisputed that, soon thereafter, [SJGK Defendants] paid [Plaintiff] $180,000 and [Plaintiff] seized and sold enough of the oil purchased by Riverhead and Skyline to cover the remainder of the $454,000-plus past due balance. Based on these undisputed facts, there is no *genuine* issue of material fact as to [Plaintiff's] . . . liability for civil conspiracy.

8

Were the Court to assume the actionable tort underlying Defendant Skyline's conspiracy claim was, for example, common law fraud, the Court nevertheless finds its conspiracy claim meritless as Defendant Skyline has not highlighted evidence of a "concerted action." A conspiracy requires a concerted action—the alleged conspirator must have known of, and acquiesced in, the wrongful conduct. *Rosenberg v. Rosenberg Bros. Special Account*, 134 Mich. App. 342, 354 (1984). Here, Defendant Skyline points simply to two temporal events—(1) that it wired a deposit to SJGK Defendants on the same day that Plaintiff and SJGK Defendants entered into the settlement agreement, and (2) that "soon thereafter," SJGK Defendants paid Plaintiff $180,000.00 towards the back rent—as proof of a civil conspiracy against Plaintiff. This entire theory is based on pure conjecture and, importantly, fails to create genuine issues of fact that Plaintiff knew of or acquiesced in an agreement or plot with SJGK Defendants to commit a wrongful act. Thus, Defendant Skyline has not offered evidence of a civil conspiracy sufficient to grant summary judgment and its civil conspiracy claim as against Plaintiff must be dismissed.

### iii. Unjust Enrichment (Count Six)

Last, Defendant Skyline alleges in its countercomplaint that it conferred the following benefit upon Plaintiff, retention of which is unjust or inequitable: "[Plaintiff] has been unjustly enriched by [Defendant Skyline] wiring [SJGK Defendants] the $250,000. [SJGK Defendants] used those monies to enter into the Settlement Agreement with [Plaintiff]." In similar vein, however, Defendant Skyline fails to create a genuine issue of material fact that Plaintiff was unjustly enriched.

In order to sustain a claim of unjust enrichment under Michigan law, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by the defendant. *Barber v. SMH (US)*, 202 Mich. App. 366, 375 (1993). As the Michigan Court of Appeals has cautioned, there must be more than a benefit received by a

defendant—a defendant "is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between two persons, it is unjust for him to retain it." *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546 (1991). If both elements are established, only then will the law imply a contract in order to prevent unjust enrichment. *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478 (2003); *see also Martin v. East Lansing School Dist.*, 193 Mich. App. 166, 177 (1992).

Defendant Skyline's unjust enrichment claim against Plaintiff must be dismissed because Defendant Skyline cannot prove either element necessary for a viable claim. First, Defendant Skyline never conferred any benefit upon Plaintiff. Instead, Defendant Skyline *speculates* that at least a portion of its deposit payment to SJGK Defendants was eventually used by SJGK Defendants to satisfy the residual rent owed to Plaintiff. No evidence has been presented, for instance, that Plaintiff and SJGK Defendants had an agreement whereby Defendant Skyline's deposit would be used to satisfy SJGK Defendants' lease obligations.

Even assuming for the sake of argument that Plaintiff "received" a benefit, Defendant Skyline must nevertheless prove that Plaintiff's retention of that benefit results in an inequity. *See Barber*, 202 Mich. App. at 375. Defendant Skyline cannot do this. Plaintiff and SJGK Defendants entered into a valid lease agreement and, pursuant to the lease agreement, it was certainly within Plaintiff's right to collect owing rent payments. Plaintiff's retention of the outstanding rent payment—$180,000.00—is far from unjust or inequitable. For all of these reasons, Defendant Skyline's unjust enrichment claim against Plaintiff fails.

## V. CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that Defendant Skyline's Motion for Partial Summary Judgment [dkt 57] is DENIED.

IT IS FURTHER ORDERED that all of Defendant Skyline's cross-claims/third-party claims against SJGK Defendants are DISMISSED.

IT IS FURTHER ORDERED that Counts Two, Three and Six of Defendant Skyline's countercomplaint/third-party complaint are DISMISSED as against Plaintiff and Pierce.

IT IS SO ORDERED.

Date:  February 28, 2014                              s/Lawrence P. Zatkoff
                                                     Hon. Lawrence P. Zatkoff
                                                     U.S. District Judge

11